Vaulx *v.* Herman.

8L 683
10L 366
1pi 400

JOSEPH VAULX *v.* E. A. HERMAN.

1. PRACTICE AND PLEADING. *New trial.* If the trial judge is dissatisfied with the verdict, upon weighing the evidence adduced, it is his duty to set it aside and grant a new trial.

2. SAME. *Same.* When the case shows that the trial judge distinctly expresses his dissatisfaction with the verdict, and ought, for the reasons stated by him, to have granted, unconditionally, a new trial, this court will grant the new trial on failure of the trial judge to grant it.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.   N. BAXTER, J.

JNO. REID for Vaulx.

W. H. HUMPHREYS and E. H. EAST for Herman.

DEADERICK, C. J., delivered the opinion of the court.

By a written agreement, between plaintiff in error, and Herman, McMurray & Stockstill, bearing date 1st January, 1872. Plaintiffs leased to said Herman, who is defendant in error, and said McMurray & Stockstill, a store house on the Public Square in Nashville, used by them as a drug store.

Stockstill sold his interest to Herman, and he thus became the owner of two-thirds, and McMurray of one-third interest in the stock. Herman then sold one-third interest to Howell, and the firm thus constituted continued in business until August 4, 1872, when the house was partially burned and rendered unfit for occupancy, until it was repaired or rebuilt. By the terms of the lease the firm was bound to return the house, at the end of two years, in good repair, and to pay quarterly at the rate of $2000 per annum rent.

A short time after the burning, Vaulx proposed to Herman to surrender the rent notes from the time of the fire, and cancel the lease. This was agreed to, upon condition, as Herman says, that he should have the refusal of the house, when repaired or rebuilt, he agreeing to give as much for it, as any one else would give. Vaulx denies that there was any such condition. In November, 1872, Vaulx rented the house to Frankland & Co., for a term of years, at $3000 per annum.

In 1876 Herman issued process in the name of Herman & McMurray, against Vaulx to recover damages for his failure to give him the "refusal" of the house. He obtained a verdict and judgment for $2,500, and Vaulx has appealed in error, to this court.

After Herman, McMurray & Howell had removed their stock from the burnt house, they negotiated for the lease of a house on Church Street, and proposed to rent it for a term of three years, into which they proposed to remove their stock, from Union Street, where they had temporarily located, and continue the drug business upon Church Street. Before comsummating this arrangement McMurray and Howell sold out to Herman. All this took place before Vaulx had rented to Frandland & Co. Neither Howell nor McMurray were parties to any arrangement to rent again of Vaulx, and both say they never had any intention of doing so.

Herman says that he did not want Vaulx's house for his firm, but for his son, James Herman, and Hagar and McMcCullough, who were contemplating a partnership in the drug business. This firm never ordered or received any goods, and abandoned their proposed partnership, after Vaulx rented to Frankland & Co.

McMurray refused to allow his name to be used as plaintiff in the cause, and it was prosecuted in the name of E. A. Herman alone. Upon his own showing, E. A. Herman never intended to return the partnership goods, either before or after he bought out his partners, to the store-house of Vaulx. He kept

the remnant of the stock saved from the fire, in Union Street for a time, and thence moved them to his own house and finally sold them.

The court charged the jury, that if Vaulx agreed to give Herman the refusal of the house upon surrender of the lease, it was a sufficient consideration for the agreement for one year's lease, and for breach plaintiff could recover for such damages as he sustained thereby.

The judge then charges as elements making up his damages, as follows: "If plaintiff had a 'stock of goods worth three or four thousand dollars, and by reason of defendant's promise, he forebore to rent another house, suitable for the sale of them, but stored them until the house should be completed," etc., "the defendant would be liable for the reasonable cost of storage, and for such ordinary or necessary damage, as the goods suffered from handling and transportation and interest on their value."

We think this charge is erroneous. It proceeded upon the idea that Herman wanted the house to move his stock on hand into it and recommence business himself at that stand. It distinctly appears from the evidence that Herman rented the house for the firm of Hagar, McCullough and his son James, according to his own and Hagar's testimony, and that he did not contemplate its occupation by himself or his own firm, but sought to rent a different house for his firm's stock, and therefore, he could not recover damages upon the ground that he was deprived of a house to put his own stock in, when he did not rent

for that object, on his own showing, and especially could he not recover damages for rents or storage until the house was completed by Vaulx, nor for damage in transportation and handling, and interest on the value of his goods as charged by the judge.

The court also erroneously charged that if plaintiff was thrown out of employment by the surrender of his lease, during the rebuilding of the house, he could recover the reasonable value of his time.  As before stated, it appears from all the evidence on this point, that plaintiff had not contracted for the house for himself, but for a distinct firm, of which his son was to be a member, and in which he was not pecuniarily interested.  No money damage therefore could have resulted to him because said firm did not get the house.

When the jury returned their verdict for $2,500, his Honor said he "thought the plaintiff was entitled to some damages, but that the verdict was excessive; that he would leave the matter to stand until the plaintiff elected to make or refused to make a reasonable abatement," and if he did not abate he would grant a new trial.  The judge added that if defendant did not accept as a finality a reasonable abatement, he would allow the verdict to stand as rendered.

Plaintiff remitted $1000, but defendant insisted upon taking an appeal, thereupon the judge overruled the motion for a new trial and rendered judgment for $2,500—the amount of the verdict of the jury.

This court has repeatedly declared that it will hesitate to set aside a verdict, when the circuit judge, who has heard all the witnesses testify, and had op-

portunity to observe their manner, etc., declares him-
self satisfied with the verdict.   The rule in this court
is different from that which should be followed in the
court below.   If the judge is dissatisfied with the
verdict, upon weighing the evidence adduced, it is his
duty to set it aside, and grant a new trial: 4 Hum.,
401–2;   2 Sneed, 632–3.

In the case before us his Honor distinctly expressed
his dissatisfaction with the verdict, and ought, for the
reason stated by him, to have granted a new trial—as
it is manifest he did not believe the verdict was right
and just.

Let the judgment be reversed.